May it please the court, Marjorie Michaels representing Mr. George Wang and Mrs. Sherry Yan. I'd request five minutes for rebuttal, please. This case is significant to every homeowner in the state of California. The issue is whether a communication giant like Comcast Cable can, without permission, without prior notice, and against the express objections of a homeowner, enter their property and dig up a 40-foot trench in their front yard and lay cable in that trench. Not connected on either end to existing cable, and do so based on solely the grounds that in 1964 when the track map was recorded, that there was language in the track map which provided the City of Pleasanton a public services easement. That public services easement, however, nowhere mentions cable or communication lines or telephone or video services or any of the services. Holes, wires, conduits, storm sewers, street trees, gas, water, heat mains, all public utilities, all appurtenances. Why doesn't that cover a cable for cable television? Well, the point is that in this case, the important California requirement that the language of the easement actually be interpreted and construed to tell us which of those things was covered or was a compatible use to Comcast Cable. Those determinations were never made by the district court below and were required to be made, especially in light of the fact that ever since the eight-foot public services easement was put on the track map, that eight-foot public services easement was only used for shade street trees. And why does that matter? It matters because of California easement law, which says that an easement has to be construed by the language of the easement itself and by the use to which it is put with the consent of both the parties where it is ambiguous or unclear as to just how that easement is going to be used. Now, in this case, there is evidence in the lower court that that easement was put in the year after they passed an ordinance, which said all the eight-foot easements would be used for street trees and public utilities had to be placed in the ten-foot utility trenches, either in the alley or under the sidewalks or in the public right-of-way streets. And the fact that it was used exclusively for street trees all those years would mean that the city under California law had abandoned the rights that may have been in the language for other purposes. So that issue of whether Comcast Cable is a public utility or actually a private company might have been an issue of fact. That should have been determined in the lower court at trial, a triable issue of fact. The issue of the prior uses of the easement would have been a triable issue of fact for which evidence could be produced. The issue of the question that you asked, that it wasn't in this case. What do we do with the fact that apparently these arguments weren't raised in response to the summary judgment motion, but only after? They were raised, however. There – okay. The court itself, and in his order on page 2, said that, plain as the assert regarding the public services easement, that it was not used by Comcast for public use and Comcast did not have the right to use it, were litigated in the party's motions for summary judgment. And the court also stated that whether there was an easement and was litigated in the – I'm sorry. I would, to be more precise, the evidence on which the plaintiffs relied here and in the motion to alter or amend was not provided to the court prior to the summary judgment ruling. Well, the evidence was provided by both parties in that they provided the language which was in – which was under dispute, you know. The easement language? The easement language. And so the court had that language before it, and as a very first step in interpreting California easements, you have to look at the language and then make the analysis, and it's absent. And I admit, okay, that my clients, being first-generation Americans and without legal counsel and new to the federal courts, having been just removed to the federal courts and then having to respond to a motion for dismissal, they responded with a summary judgment in opposition, which shows that they were not familiar with these legal processes. And while they may have been inartful in their arguments and so forth, they did present a lot of documentary evidence which showed considerable number of issues of fact which needed to be determined by a trier of fact. And while they didn't seem to realize in defending the motion to dismiss, they did present a lot of documentary evidence with the summary judgment motion that they needed to attest to the documents with sworn declaration. By the time they got around to the Rule 59 motion, they finally had figured that out, and they would have been happy to comply if the court had just nudged them in that direction. The truth is that the court went ahead after converting the motion to dismiss to a summary judgment motion and just dismissed the case outright without ever allowing them an opportunity for a hearing and without any right to amend their complaint. I think it would have been successful. I mean, we're here in federal court. We're not here in state court hearing the merits of a zoning or easement decision. You have to have a private property right that's being taken by the government, and here there's an easement. What right did they have to the property? You can argue the scope of the easement in state court, but what right did they have to that property that the city controlled as a public easement? It's a matter of federal property. Yes, I understand, Your Honor. You can tell from their motion to dismiss being filed with a motion to remand it back to state court that that definitely was their intention to have these issues. They said that that was the forefront, just the property issues. But I will say that both in their amended complaint, which got them into federal court because they stated some 1983 claims and so forth, and in their motion for summary judgment, both places, they raised the Loretto case, the Supreme Court case, which is pretty outright in its condemnation of cable coming into properties without consent of the property owner. I believe the Supreme Court calls it an invasion and permanent occupancy and says that even if the cable company takes no greater space than a bread box, it's a taking, and where a governmental entity is involved, it has to be compensated. Does that case involve an easement? That case does not involve an easement, so there is this new avenue, perhaps, that Comcast Cable feels that they can attach to. But it can't be just an easement. There has to be an easement that, under the cable law, is compatible with the use being made in question. And we don't have that determination by the lower court. The lower court just said there's an easement. And partly it's because of the way that the briefing was brought to the court, one has to admit. Because in the motion to dismiss, the defendants raised the issue that this is a final map, and because it's a final map, it is conclusive on the future property owners. Well, yes, and then that made the appellants believe that this was a big issue, and they should address it, and they did. And the court did rule that there was a final map. I'm not arguing about that, but that's just a first step. There was a final map with this language on it. Now the court needed to go to the second step. It had the language before it. It was required under the law to construe the language of that. And you say, well, that's California law and we're in the Federal courts, but there is that O'Leary case. You're down to about a little under four minutes. Did you want to reserve? Thank you, Your Honor. Yes, I will. May it please the Court, I'm Stephen Kaus, representing Comcast and the City of Pleasanton. Your Honor, appellants have raised a number of issues throughout the course of this litigation, starting with the finality, the map, and now in their reply brief, Loretto and the Century Cable case. But all of them are disposed of by the point that I think the court has made, although I don't take anything for granted, that there is a public service easement. The developer set aside in the deeds, and the maps are included in the excerpts of record that we filed with the court, an eight-foot wide public service easement that is for all public facilities, including poles, wiles, wires, and conduits. And that is something which includes certainly cable television. Comcast is a franchise provider of services in Pleasanton and, as such, is entitled to install cable in compatible easements by the Federal Cable Act, by the California Government Code, Section 53066, and by the franchise ordinance itself, which we've included in the record. The language of this easement, public facilities, is purposefully broad and nonspecific and was intended, obviously, to provide a place to put infrastructure for services that are going to be provided to other residents of this subtradition. In other words, in order for facilities such as telephone, cable, power, water, and I suppose for sewage to go the other way, to and from these properties, there has to be a way to transport it. And the place to transport it that was provided by the developer and accepted by the city as a public service easement is this eight-foot easement that is at the front of the property. The statute ordinance that's referred to as differentiating eight-foot easements for trees and ten-foot easements for other facilities, we've included that in our supplemental excerpts of record. That's not what it says. It sets out some basic guidelines for subdivisions that can be overruled by the planning commission, by the city council, and certainly one has to go to the specific map that was recorded here and the dedication of this public service easement that was accepted by the city and the language of the dedication which the court has recited. And it provides for public facilities. The question is something compatible with street trees. Compatible doesn't mean identical. Compatible means they can exist at the same time, and trees and conduits and wires under the trees can coexist at the same time. There's no reason to think that they're not compatible. In fact, they're all listed in the same paragraph here setting aside the public service easement. Under Salvatti v. Falcon Cable, and that clearly is the main case on which we rely, an easement which was, and I should say Cable was franchised in Pleasanton in 1963, so the idea that it's self-evident that Cable was not in the easement at the beginning is just not in the record. It's not true. It's not in the record either way. But even if this were just a telephone easement, the Salvatti case, which was actually a stronger case against the cable company because it was actually not a public service easement. It was a private easement in which there was a, the telephone company had the right to the easement and was apportioning it to the cable company. The court said that easements have to be read in light of normal progress, and that normal progress of communications has gone from the telephone to cable, you know, the Internet to all sorts of other communications facilities, and that an easement that was intended for one form of communication facility had to be read over time to include progress. Now, there are two things that are not in our brief and we haven't addressed because they were brought up for the first time in the reply brief in this court, and that's the Loretto case and the Century Cable case. The Loretto case is discussed in Salvatti, and as Salvatti points out, and as Judge Rosenthal has pointed out, there is no easement in Loretto. In Loretto, there was a statute that allowed cable companies in New York City to install boxes on the side of buildings and pay the owner a dollar, and that was a taking. And the argument there was it's de minimis, the dollar's fine, who cares, it's not really a taking, and the Supreme Court rejected that. That has nothing to do with this case. This case has an easement. There is no property right to keep cable or other communications facilities out of the easement, so Loretto is completely inapplicable. The Century Cable case was not cited in our brief because there also was no easement, and we were citing easement cases. The Century Cable case is an MDU case. There are a lot of these cases around the country. There are federal regulations, and the issue is when can a cable company get into a private apartment building? And the answer in Century Cable, as it has been in many other cases, is they can't, without the consent of the owner or without an easement. The Century Cable case says there is, quote, no evidence of an easement within the 12 buildings in this apartment complex. So it's a completely different case. It doesn't discuss whether an easement is available to cable. It discusses whether the operator of 12 apartment buildings can sign a contract with a satellite provider of video and exclude a cable company from running its wires within the buildings where it does not have an easement. In this case, did Comcast ever get an amended permit that listed the correct address? No. They did not. And the reason is that no permit was necessary because an encroachment Why did it get the permit in the first place? Because they thought they were going to have to break up the sidewalk. And if you break up the sidewalk or break up the street, you're in the public right-of-way, and then you need an encroachment permit. And as the communications from Pleasanton indicate, where they do not have to go into the right-of-way or the sidewalk, they didn't need an encroachment permit. So therefore, they didn't need one with the correct address. And what kind of notice was given to the Wongs that the trench was going to be started, that digging was going to occur? Notes were left, and they tried to contact them and talk to them, and the Wongs reacted, as we see in the record, by objecting to it and going to the city. So I would say relations were strained, but they tried to leave cards. A card that says, call me, left by one of the people who was doing the work. They were trying to communicate with them, and communications obviously broke down and were strained. But also by now the trench has been dug, the cable laid, right? Oh, yes. Yes, it's all finished. It's finished, and I interpreted the request that the property be put back in order as a request that the cable be taken back out of the ground. I didn't understand there to be anything in the pleadings about cosmetic damage to the property. But I assume if there is cosmetic damage, you'd be willing to sit down with the Wongs. And maybe you can today. If there's cosmetic damage, do something to restore the property. You can find that out with Dr. Counsel. I guess if the court rules today, we'll sit down today and do that. No, there's no question Comcast is responsible for that. There was never any issue about that. All right. So the two cases that are cited in the reply are inapposite because neither of them involve easements. So the issue here is what would the California Supreme Court rule, although I think the appellate courts and the Supreme Court are, you know, have the same position on this particular issue. But the Foust case, F-A-U-S, which was a case which allowed buses on an easement for streetcars is a California Supreme Court case. That's one of the cases that Salvatti relied on. And the Camp Meeker case cited in our brief is another case where the California Supreme Court spoke of the evolution of easements to meet foreseeable changes in the situation. And there are a number of court of appeal cases. My favorite is the one where Venice, California was, where I lived for a short period of time, was supposed to be like Venice, Italy and have canals, which were both for transportation and recreation, as anyone who's been to Venice, Italy knows. But that didn't really work out, and they decided to turn them into roads. And there was a lawsuit whether the dedication for canals would allow roads, which seemed quite different. Roads have a different recreational aspect, I would say, different from canals. But the court had no problem saying, well, that's the progress that's happened here. The canals aren't working. They're outmoded. The motor car is taken over. And so that change in the easement can be made. There's another one in Griffith Park in Los Angeles where it was dedicated by the Griffith family for recreational purposes, and the city decided to fill one of the canyons with dirt on top of it. Mr. Griffith sued, and he was told, no, that's close enough. That's the way this area is going to be managed, and that counts as a recreational purpose or part of a recreational purpose to put garbage in this canyon. So there are all these cases. And then there's the case Winslow, which is cited by the appellant. And that is a very, very different case. And to the extent that it's good law today, which is questionable, it hasn't been relied on by a reported decision in 50 years, it is a case that interprets an easement where there was no geographical boundary and simply a right to carry water across property. And that case was then interpreted that the original use that was made of that easement established the geographic area where that would occur. Other cases that have followed that have, even the ones that followed Winslow to some extent, have said that, well, the existing pipe has to go where it was originally put, but you can put other pipes. One of them says you can put larger pipes in the same place. And so this is a case that is, A, inapplicable because here we have a specific geographic boundary at the front of the property as a public service easement, and, B, is sort of honored in the breach. The cases that have followed it, and there are old cases, have found ways around it by saying, well, yes, that applies to this pipe, but the water company can put five more other pipes to serve the 10,000 people that now live on the other side of the property where there were only three people there before. The other point that's made is abandonment and overburdening, which I have to confess I'm somewhat confused by exactly what the point is. But I do know this, that the cases that are relied on in the brief are very different from what we're talking about here. In fact, the people versus ocean shore case, which seems to be the main one, I think it's supposed to be in the abandonment argument, but it's really in the overburden part of the brief, talks about the huge requirement in order to abandon an easement. In this case, the railroad company had been out of business I think for a couple of decades and in liquidation, and it filed a statement that its only activities were going to be to conclude the liquidation, and the court felt that might be an abandonment. But you have to have a clear intention to abandon an easement. It's not just non-use, or in this case, it's not, as is alleged, sort of not being there on day one of the easement. There's no hint in any case that that's abandonment. And this is not overburdening the easement. This is exactly what the easement is for. And actually, it's the appellants who remove the trees. Trees aren't removed because of any action of Comcast, and the appellants could plant their trees again if they chose to do that. As the court has pointed out, there's also the issue that the issues were not raised really on appeal. They were not raised in the trial court until the reply brief on the Rule 59 motion. And that really is too late, and I think on those grounds alone, the trial court's decision should be affirmed. It is true, as counsel says, that these were pro se litigants, but they're not prisoners. They're pro se litigants by choice, and the jurisprudence in this circuit is that pro se litigants by choice are expected to follow the rules of court and understand what's going on. And the final point I'll make, as my time is running out, is that even if something they did caused them to not understand the procedure, it's harmless error here because they put all the same documents in on the Rule 59 motion after they knew that summary judgment was going to be granted against them, and the same decision was justified under those documents. So they were amply aware of what's going on and still did not put anything into evidence to undermine the court's summary judgment decision. Thank you, counsel. Thank you. Thank you. Counsel argues that this is de minimis. I think the last sentence of their brief said these are spurious matters, that they should be done with. But at the bottom line, what Comcast is saying is that they can go anywhere there is an easement. If they have the city franchise, that's part of it. It has to be for public purpose. So let's say that you went to trial on this. What damages would you allege? And what damage to the property has there been? You know, I don't know that the damages are going to be as important to them as some clarification of their rights as Americans to their front yard, because there's a reason Loretto used the language invasion and permanent occupancy. Now there's this cable in their front yard, and they don't know when they're going to come in to maintain it, and what else they're going to come in because it's eight foot. So what else can go there? Well, the sewer, a lot of wires, telecommunications, there are a lot of things that can go on that easement that Comcast will have nothing to do with. Which the city, the abandonment argument, the city never used it. It's awfully tough to say that a city abandoned an easement just because trees grew. I mean, that's, I think that's a very difficult argument. So my question is, I'm getting, setting, Adlai Stevenson always said there's time to rise above principle. You know, what damages do you have here? Well, the damages they had were. Are there any cosmetic damages? They said that it has never been put back the way that it was before. Well, what is that? Your Honor, that would be an issue of fact for the jury and for them to present if they got a chance to have a real case before the court instead of just come in and have it thrown out without the opportunity to spell those out. Well, here you are. You're the lawyer, and do you have any damages that you've, you haven't talked to him about it, I gather.  As to what damages they might be able to persuade a jury that they suffered if they actually had a chance for a trial on the merits. We're talking property damages, inverse condemnation. So we're talking property damages. And so you've heard Comcast today say, look, if there's some cosmetic problems, we'll deal with it. And you've heard their offer on that. So that's something you can discuss with your clients. That was wonderful of you to solicit that cooperation, Your Honor. I don't believe I've ever heard the offer before, but it's good to have it here. The point is that on that 59E motion, there are four grounds for that motion, and one of them is manifest injustice. And Mr. Wong and Ms. Yan did show that there's a manifest injustice in having this cable company just come into your front yard and dig a trench and put their cable there without their consent or compensation and to permanently occupy it there. And they don't want it, and that's why. They don't. It's true, but that is what public easements do. This very day, trenches are being dug all around the Bay Area where there are sewers going in or wires going in. On the other hand, I think that they've acknowledged that they want to make sure that they treat you as good neighbors and clean up. And I'm sure they want your clients as Comcast customers if they want to join that. If you have some of those kind of issues, you should contact them. And there were all these other uses like for water mains and gas and sewer, but the city did not put those utilities in that spot in the front yard. They do have utility trenches at this location. They have all of those types of public utilities located in the alley behind the house or in the public right-of-way or in the sidewalk. They don't have any other of those services across the Long's front yard. Only Comcast. There are no communication systems mentioned in this easement. There are no video systems. There's nothing that Comcast provides that is mentioned in the language of this easement. And under California law, the language of the easement and the use to which that easement has made. Now, he talked about Winslow. I've been in cases where Winslow's been mentioned. It's just that maybe it's not coming up on court of appeal cases because it's established law that when there's questions about it, that the two parties with the mutual consent establish the use that's going to be made of it by their use over the years. In this case, it's 40 years it's been used only for shade trees, and shade trees are an important use of a public services easement. Thank you, counsel. Your time has expired. Thank you both for your arguments. And the case just heard will be submitted for decision. All rise. This court is in a session.
judges: Rosenthal, Fletcher B. , Thomas